UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FABIAN SANCHEZ,

              Petitioner,

    v.

CHRISTIAN PHIFFER,

              Respondent.

No. 2:17-cv-0080 GGH

ORDER[1]

*Introduction and Summary*

      Some defendants experience ineffective assistance at trial, and the usual remedy, if the required prejudice is shown, is a new criminal proceeding, even retrial. Not many who have been granted a new trial experience ineffective assistance again at the second criminal proceeding. Petitioner herein is in that infrequent subset where ineffective assistance struck twice. After thorough consideration of the issues in this case, the undersigned will deny Claims 1 and 2, and order an evidentiary hearing on Claim 3.

*Background Facts*

      As is ordinarily the case, the California Court of Appeal supplies the pertinent facts which

---

[1] This matter is proceeding before the undersigned, a United States Magistrate Judge, with the consent of the parties pursuant to 28 U.S.C. § 636(c).

guide resolution of this federal habeas.[2]  This case is no different:

> This case returns after our 2012 reversal of defendant Fabian Sanchez's convictions for burglary, petty theft with a prior, and prowling based on the ineffective assistance of his trial counsel. On remand, defendant pled no contest to first degree burglary (Pen.Code, § 459)1 with a special allegation that the dwelling was occupied during the commission of the burglary (§ 667.5, subd. (c)(21)), petty theft with a prior (§§ 484, subd. (a), 490.5, subd. (a),2 666, subd. (b)) and misdemeanor prowling (§ 647, subd. (h)). He admitted a prior strike conviction and prior serious felony. (§§ 667, subds.(a)(1), (c), (e)(1).) His plea was deemed an admission of a violation of probation in another burglary case. The trial court sentenced him to an aggregate term of 14 years and four months and later granted his request for a certificate of probable cause (§ 1237.5).

> On appeal, defendant again challenges the adequacy of his legal representation, contending: (1) his second counsel had a conflict of interest and the trial court erred in not replacing her; (2) the People must re-offer him the original plea offer of eight years and four months; and (3) counsel provided ineffective assistance.  Although we find much of the procedural history in this case troubling, as we detail post, we conclude that defendant has failed to show prejudicial error.  Accordingly, we must affirm.

## BACKGROUND

> We granted the People's request to take judicial notice of the record in defendant's prior appeal, case No. C066742.  We borrow liberally from our previous opinion in that case. (*People v. Sanchez* (Aug. 30, 2012, C066742) [nonpub. opn.] (*Sanchez*).)

> *2010 Proceedings*

> "Prior to the preliminary hearing, defendant was offered a plea deal to resolve both the burglary and probation violation cases. Defendant would plead to the burglary and admit the occupied dwelling and prior serious felony conviction enhancements.  The People would dismiss the prior strike allegation.  Defendant would be sentenced to an aggregate term of eight years and four months, consisting of a low term of two years on the burglary conviction, plus five years for the prior serious felony enhancement and 16 months on the separate probation violation.  The offer was to remain open until the preliminary hearing.  Defendant rejected the plea.  During the preliminary hearing, defense counsel argued defendant should not be held to answer on the burglary charge, because even though the surveillance video showed him briefly entering the garage it could not be inferred he intended to steal from the garage, only that he intended to commit theft from the vehicle." (*Sanchez, supra*, C066742, slip opn. at p. at *2.)

---

[2] Petitioner does not challenge the facts; he does challenge the legal conclusions which are drawn from the facts.

At trial, defense counsel conceded the video surveillance of the burglary established defendant had committed the petty theft from the truck and the prowling offenses. Counsel argued that although defendant went into the garage, he was there only a few seconds and did not take anything, and there was no evidence he had the intent to steal from the garage. (*Sanchez, supra*, C066742, slip opn. at p. at \*2.)

A jury found defendant guilty of all counts and found the special allegation attached to the burglary count true. In bifurcated proceedings, the court found the prior conviction allegation true. The trial court sentenced defendant to an aggregate term on both cases of 14 years and four months in prison. (*Sanchez, supra*, C066742, slip opn. at p. at \*3.)

On appeal, we found defense counsel rendered ineffective assistance. "The record here establishes that from the earliest stages of the proceedings and throughout, defense counsel was operating under a misapprehension of the intent required for burglary. Specifically, counsel wrongly believed defendant had to have intended to enter the garage with the intent to commit a theft or felony within the garage. Counsel rested his defense on this erroneous view of the law. As a result, his defense counsel effectively argued defendant was guilty of burglary." (*Sanchez, supra*, C066742, slip opn. at p. at \*4.) "[A]s a direct result of counsel's misunderstanding of the law, he argued a legal theory that was unsupported by the law on the intent required for burglary. He also failed to argue an identity defense, a defense that could be supported by the evidence." (*Id.* at p. \*5.)

We concluded defendant was not provided effective assistance of counsel and no "true adversarial criminal trial was conducted." (*Sanchez, supra*, C066742, slip opn. at p. \*5.) Accordingly, we reversed the conviction and remanded for further proceedings. (*Id.* at p. \*6.)

*2012–2013 Proceedings*

On remand, the People moved to amend the information; the amendment charged defendant in count 2 with a felony violation of "Sections 484(a), 490.5(a), and 666(b) of the California Penal Code, PETTY THEFT OF RETAIL MERCHANDISE WITH PRIOR CONVICTION." The original information had charged felony petty theft as well, but as a violation of sections 484, subd. (a), 488, and 666. The trial court granted the motion to amend; defense counsel did not object to the amendment.

On December 3, 2012, at defendant's first appearance in court, assistant public defender Richard Van Zandt—who had represented defendant in the first trial—told the court he had spoken with defendant and there was "not going to be a resolution" to the case. The case was set for a jury trial. Shortly thereafter, Van Zandt was replaced by another assistant public defender, his supervisor Sally Frederickson.

At a March 1, 2013, pretrial hearing to set an early disposition conference defense counsel put on the record and defendant confirmed that he was "not interested" in the original offer of eight years, four months. The People clarified that they were not currently offering eight years four months, and that was not their current position as to how the case should resolve.

On March 27, 2013, defendant moved for substitute counsel. Fredericksen and the Public Defender, Tracie Olson, were present. Defendant first objected that Fredericksen had supervised Van Zandt, and therefore Van Zandt's inadequacy could be attributable to her. In response, Fredericksen claimed Van Zandt was very experienced and she did not recall discussing the case with him. Defendant's primary complaint was that Fredericksen had been unable to get him a plea deal and he was willing to resolve the case. He explained he had been offered an eight-year deal before the first trial, but he did not take it because his attorney told him they "could beat the case." Defendant said he declined the offer without knowing that his attorney "wasn't knowledgeable on the law." Defendant said he had understood he was going to be appointed a conflict of interest attorney.

Fredericksen responded that defendant was "dissatisfied with my inability to get an offer that I cannot get." She explained she was limited in her ability to reduce defendant's sentence due to the charges, especially the prior serious felony, and the violation of probation in a prior burglary case. The court agreed with her assessment, telling defendant: "The fact that you may have been offered something way back when in the beginning and your attorney advised you not to take it at the time, and you're saying, gee, that's kind of unfair, and I think I might agree with you, but I don't think it has any legal consequence." The court explained defense counsel could not control any plea offers by the district attorney. The court denied defendant's motion.

The People made a new offer of 12 years. Defense counsel advised defendant to reject that offer; she proposed a counteroffer of 10 years four months. Defendant eventually agreed to plead no contest to all the charges, and to admit the prior conviction allegations and the violation of probation, with the understanding his sentence would be between 10 years four months and 14 years 4 months. The plea form advised defendant that his "maximum exposure" was 18 years and four months in state prison. Counsel stipulated to a factual basis for the plea based on the court's assertion it had conducted the prior trial. The trial court sentenced defendant to an aggregate term of 14 years and four months.

<u>People v. Sanchez</u>, No. C0073886, 2015 WL 3902113, at *1-3 (Cal. App. June, 25, 2015).

*Issues*

Petitioner raises the following issues in his federal habeas petition:

1. The Trial Court Erred in Denying Substitution of Counsel;

4

1  2. Ineffective Assistance of Counsel Based on Conflict of Interest; and

2  3. Ineffective Assistance of Counsel In Conjunction With No Contest Plea (Second

3     Proceeding).

4  *AEDPA Standards*

5     The statutory limitations of the power of federal courts to issue habeas corpus relief for

6  persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

7  Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

8        An application for a writ of habeas corpus on behalf of a person in
         custody pursuant to the judgment of a State court shall not be
9        granted with respect to any claim that was adjudicated on the merits
         in State court proceedings unless the adjudication of the claim–
10
         (1) resulted in a decision that was contrary to, or involved an
11       unreasonable application of, clearly established Federal law, as
         determined by the Supreme Court of the United States; or
12
         (2) resulted in a decision that was based on an unreasonable
13       determination of the facts in light of the evidence presented in the
         State court proceeding.
14

15     For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

16  of the United States Supreme Court at the time of the last reasoned state court decision.

17  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) citing Greene v. Fisher, 565 U.S. 34,

18  39 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) citing Williams v. Taylor, 529

19  U.S. 362, 405-406 (2000). Circuit precedent may not be "used to refine or sharpen a general

20  principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

21   not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) citing Parker v. Matthews, 567

22  U.S. 37, 48 (2012). Nor may it be used to "determine whether a particular rule of law is so

23  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

24  be accepted as correct. Id.

25     A state court decision is "contrary to" clearly established federal law if it applies a rule

26  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

27  precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

28  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'" "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, supra, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's

6

decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. at 101, quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Emphasizing the stringency of this standard, which "stops short of imposing a

complete bar of federal court relitigation of claims already rejected in state court proceedings [,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102, citing Lockyer, supra, 538 U.S. at 75. With these principles in mind the court turns to the merits of the petition.

*Discussion*

A.  Denying Substitution of Counsel

Petitioner asserts that the trial judge should have automatically substituted counsel due to an actual conflict of counsel.  He asserts that this actual conflict stemmed from the fact that the Public Defender supervisor --of his first proceeding ineffective counsel-- represented petitioner in the second proceeding, and that a presumed "loyalty to one's subordinate" precluded effective representation.  Supplementing the petition's argument with arguments made before the Court of Appeal (petitioner did not file a traverse in this federal case), Petitioner goes on to discuss how this supposed actual conflict adversely affected counsel's performance during the second proceeding.

The Court of Appeal treated this claim as one expressing an "actual conflict" evidently finding that a proven conflict causing an adverse effect on attorney representation would require a substitution of counsel:

> "A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client. [Citations.] 'It has long been held that under both Constitutions, a defendant is deprived of his or her constitutional right to the assistance of counsel in certain circumstances when, despite the physical presence of a defense attorney at trial, that attorney labored under a conflict of interest that compromised his or her loyalty to the defendant.' [Citation.] 'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or his own interests. [Citation.]" ' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).)
>
> Claims of Sixth Amendment violations based on conflicts of interest are a category of ineffective assistance of counsel claim that "generally require a defendant to show (1) counsel's deficient performance, and (2) a reasonable probability that, absent counsel's

deficiencies, the result of the proceeding would have been different. [Citation.] In the context of a conflict of interest claim, deficient performance is demonstrated by a showing that defense counsel labored under an actual conflict of interest 'that affected counsel's performance —as opposed to a mere theoretical division of loyalties.' [Citations.] '[I]nquiry into actual conflict [does not require] something separate and apart from adverse effect.' [Citation.] 'An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.' [Citation.]" (, 45 Cal.4th at pp. 417–418.)

The only articulated adverse effect of the alleged conflict on Fredericksen's performance is her failure to ask for an order requiring the People to re-offer the eight-year, four-month plea deal. We next decide whether that failure was deficient performance.

People v. Sanchez, 2015 WL 3902113, at *3-4.[3]

The Court of Appeal went on to find that because petitioner had expressed that he did not want the previous deal, the alleged conflict could not have had an adverse effect on counsel's performance (and hence substitution of counsel was not required).

The record, however, provides a different explanation for counsel's failure to act. Counsel may not have sought the remedy provided by *Lafler* simply because defendant had indicated multiple times that he did not want it. At the outset, Van Zandt reported that after speaking with defendant, there would be no resolution of the case. Later, Fredericksen and defendant confirmed on the record that defendant was "not interested" in the original plea offer.

Although defendant asserts that when he moved for substitute counsel, he argued "that Fredericksen had not assisted him to obtain the original plea offer from 2010," the record does not support his assertion. Defendant was clearly upset that Fredericksen had not been able to obtain a plea offer other than an offer of 13 years which he rejected— "That's not a deal." He referred to the previous offer of eight years and indicated he was willing to resolve the case, but he never said he wanted the previous offer. In fact, the record suggests defendant was hoping for an even better offer. Later in the hearing, defendant said he understood that the five-year prior and strike would result in a nine-year sentence and seemed to indicate that was not acceptable. He suggested asking the judge to strike his strike, and indicated that was how the eight-year offer was reached. He then calculated this new sentence as two years for the burglary and a year and a half for the violation. "That's all." He made no mention of the five-year prior or the theft charge; he appears to have been hoping for a three-year, six-month sentence. This is consistent with his previous statement to probation that if "given the chance he would have accepted a *four year* prison term." (Italics

---

[3] <u>Doolin</u> had cited <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002) at various points in its opinion.

added)

> Defendant's ambiguous statements at the hearing on his motion for substitute counsel, particularly in light of his earlier express rejection of the prior plea deal, were insufficient to signal to counsel that she should try to obtain the prior offer by seeking relief under *Lafler*. Further, even assuming for the sake of argument that defendant's statements at the hearing constituted a request for the prior plea offer, the record does not show why, at that point, counsel did not seek a *Lafler* remedy. If the record does not show why counsel failed to act in the manner challenged, we must affirm the judgment unless there simply could be no satisfactory explanation for counsel's conduct. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Defendant has not shown that counsel was ignorant of or misunderstood the law. Indeed, by putting defendant's lack of interest in the prior offer on the record, counsel earlier had signaled that resurrecting the prior offer had been considered and rejected. Thus there *could* be a satisfactory explanation for counsel's failure to act to request a *Lafler* remedy at the *Marsden* hearing.

People v. Sanchez, 2015 WL 3902113, at *5-6 (footnote omitted).

To the extent that the Court of Appeal in this case, found that the adverse impact of *any* asserted conflict, no matter how remote or illogical, will solely be decided by whether counsel made a mistake in representation, the undersigned finds that the Court of Appeal overemphasized Mickens v. Taylor. There has to be, at least, a conflict that jurists would view as a possible, potential representation of conflicting interests, or a conflict which *itself* played a causative role in the alleged adverse performance.

> Lest today's holding be misconstrued, we note that the only question presented was the effect of a trial court's failure to inquire into a potential conflict upon the *Sullivan* rule that deficient performance of counsel must be shown. The case was presented and argued on the assumption that (absent some exception for failure to inquire) *Sullivan* would be applicable—requiring a showing of defective performance, but not requiring in addition (as *Strickland* does in other ineffectiveness-of-counsel cases), a showing of probable effect upon the outcome of trial. That assumption was not unreasonable in light of the holdings of Courts of Appeals, which have applied *Sullivan* "unblinkingly" to "all kinds of alleged attorney ethical conflicts," *Beets v. Scott*, 65 F.3d 1258, 1266 (C.A.5 1995) (en banc). They have invoked the *Sullivan* standard not only when (as here) there is a conflict rooted in counsel's obligations to former clients, *see, e.g., Perillo v. Johnson*, 205 F.3d 775, 797–799 (C.A.5 2000); *Freund v. Butterworth*, 165 F.3d 839, 858–860 (C.A.11 1999); *Mannhalt v. Reed*, 847 F.2d 576, 580 (C.A.9 1988); *United States v. Young*, 644 F.2d 1008, 1013

(C.A.4 1981), but even when representation of the defendant somehow implicates counsel's personal or financial interests, including a book deal, *United States v. Hearst*, 638 F.2d 1190, 1193 (C.A.9 1980), a job with the prosecutor's office, *Garcia v. Bunnell*, 33 F.3d 1193, 1194–1195, 1198, n. 4 (C.A.9 1994), the teaching of classes to Internal Revenue Service agents, *United States v. Michaud*, 925 F.2d 37, 40–42 (C.A.1 1991), a romantic "entanglement" with the prosecutor, *Summerlin v. Stewart*, 267 F.3d 926, 935–941 (C.A.9 2001), or fear of antagonizing the trial judge, *United States v. Sayan*, 968 F.2d 55, 64–65 (C.A.D.C.1992).

It must be said, however, that the language of *Sullivan* itself does not clearly establish, or indeed even support, such expansive application. "[U]ntil," it said, "a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." 446 U.S., at 350, 100 S.Ct. 1708 (emphasis added).

Mickens v.Taylor, 535 U.S. 162, 174-175 (2001).

As stated in Hovey v. Ayers, 458 F.3d 892, 908-909 (2004), attorney neglect can be different from attorney conflict.

Hovey argues that counsel should have followed up on the informants' histories of mental health problems and drug and alcohol dependency. Counsel stated that he faced an "impediment" due to the prior representation of the informants by the Public Defender's Office and by co-counsel and that there was a certain amount of investigation that he did not undertake because he felt constrained by the conflict. The district court, however, did not take counsel's testimony at face value, but instead made a factual finding that counsel's failure to fully investigate the informants was not motivated by any conflict of interest, but rather by counsel's own incompetence. Based on a review of the evidence, that finding was not clearly erroneous. Counsel's no-holds-barred impeachment of the informants, adopting a trial strategy of portraying the informants as untrustworthy individuals who fabricated testimony for their own benefit, supports the district court's conclusion that counsel's handling of the informants was not affected by the indirect conflict.

Because the district court properly found that any failure to investigate the evidence supporting an alternative defense theory stemmed from neglect, not from divided loyalties, we focus our inquiry on the traditional inquiry into deficiency and prejudice that is applicable to such ineffective assistance claims.

See also Foote v. Del Papa, 492 F.3d 1026, 1029-1030 (9th Cir. 2007) (emphasis added):

*Cuyler v. Sullivan* does not save Foote's claim. *Sullivan* established that under the Sixth Amendment we will "forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict in instances where assistance of counsel

has been denied entirely or during a critical stage of the proceeding." 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We have described this principal as the "*Sullivan* exception" to the rule that a habeas petitioner must show prejudice in connection with his ineffective assistance of counsel claim. *See Earp v. Ornoski*, 431 F.3d 1158, 1183 (9th Cir.2005); *see also Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (recognizing *Sullivan* exception). The *Sullivan* exception applies where the petitioner shows: (1) that his counsel actively represented conflicting interests; and (2) that this adversely affected his counsel's performance. *See id*. at 1182, citing *Sullivan*, 446 U.S. at 348, 100 S.Ct. 1708. "To show an actual conflict resulting in an adverse effect, [the petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not *and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006) (quotations omitted).

Thus, petitioner's claim fails on two points under established Supreme Court authority—he has not shown the active representation of conflicting interests, nor did he show any relationship whatsoever between the "failure" to ask for the previous deal and any presumed representation of adverse interests.

The Public Defender's office through its supervisory attorney (not even the previous attorney from the Public Defender's office), represented petitioner in the second proceeding. There is no realistically possible division of loyalties in such a scenario. The public defender was not representing its previous attorney in any parallel disciplinary proceeding—the mistake of the previous attorney had been adjudicated, and been rectified, and was completely irrelevant to the second proceeding. There was no aspect of the second proceeding dependent in any part in establishing that the first attorney was correct, or excused, in his previous legal error. There was no reason to have to "defend" the previous attorney. To what possible end could have supervisory attorney been conflicted? Petitioner thinks that there had to have been "collegial interest" between the attorneys in the public defender's office which naturally had an adverse impact on the supervisory attorney's performance in the second proceeding. However, "collegial interest" is not a conflict in itself. There would have to be some need to "represent" the first attorney, or the "honor" of the public defender's office, but again, there was no aspect of the second

proceeding where such would have been relevant.  What petitioner would have to allege in order to have any relevancy of this "collegial interest" was that the failure to seek the <u>Lafler</u> remedy was marked by some *sub rosa* vindictive spite on the part of supervisory counsel against petitioner because he had demonstrated the temerity to argue that the first public defender was ineffective, or that the public defender's office as a whole was of suspect expertise, i.e., she was "representing" first counsel (or her office) in the second proceeding by inflicting some revengeful neglect on petitioner.  This is so farfetched under the present facts as not to count as the "active representation of conflicting interests" in the first place.  There was no "representation" of the first counsel, or the public defender's office, relevant to any aspect of the second proceeding, petitioner's subjective, speculative suspicions notwithstanding.[4]

But even if petitioner's allegations rise to the level of active representation of conflicting interests, that brings us to the "adverse effect" part of the equation.  The Court of Appeal believed that because the facts suggested *at the time* of the <u>Marsden</u> motion petitioner had expressed no interest in the previous deal,[5] counsel's "conflict" could not have adversely affected petitioner.  Petitioner has proffered no facts which would make the factual finding of the Court of Appeal AEDPA unreasonable.[6]  At best, he postulates his present state of mind, after all was said and done in the second proceeding, that he might have, in hindsight, taken the deal at the time of the <u>Marsden</u> motion if he had to make the decision over again.  The undersigned again states that petitioner has gone no distance in establishing any direct facts or reasonable inferences, that counsel was acting adversely in not resurrecting the previously offered deal *because of* the alleged collegial interest.   Petitioner's requested inference to the contrary is completely a speculative, illogical suspicion and unworthy of being called a "reasonable" inference.

The Court of Appeal analyzed <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012), as the supposed adverse effect on petitioner's representation due to the assumed and not analyzed "conflict of

---

[4] Petitioner believes the general commentary during his <u>Marsden</u> motion that the first attorney was experienced demonstrated the "representation."  But whether first counsel was experienced or not, had nothing to do with the second proceeding as that counsel was not involved.

[5] Ultimately, petitioner accepted a worse deal in the second proceeding; so, his state of mind must have markedly changed over time for some unexplained reason.

[6] The Court of Appeal's analysis is discussed further, <u>infra</u>.

13

1  interest." This Supreme Court case held that ineffective assistance in the first proceeding is not
2  cured by a second proceeding free of constitutional error. This has to do with whether in the
3  subsequent proceeding the trial court should be motioned to mandate the re-offer of the plea
4  bargain possibly, erroneously rejected by petitioner on account of bad advice in the first
5  proceeding. As set forth in the facts above, the bad advice was first counsel's erroneous belief
6  that as a matter of law petitioner was innocent of the burglary charge, and his consequent
7  disparagement of the offered plea bargain. Counsel in the second proceeding did not move the
8  trial court for the *discretionary* Lafler remedy.

9      The Court of Appeal analyzed this issue under the "conflict" rubric, but without
10  discussion simply assumed the conflict and assumed that its (ultimately found harmless) effect
11  was caused by the supposed conflict. The undersigned will discuss further this alleged
12  ineffectiveness of second counsel in Section C which analyzes "simple" ineffective assistance.
13  However, the point here in Section A is that no conflict was present, nor could any asserted
14  ineffective assistance have been caused by the supposed conflict.

15      Moreover, the Court of Appeal assumed that the Lafler remedy must be made at the time
16  of a Marsden motion, to ward off any "adverse effect" of the "conflicted" second counsel. There
17  was no temporal requirement in Lafler for the motion to mandate the reoffer of the initial case
18  plea bargain, and plea negotiations continued in this case. It might well have been possible for
19  the prosecution to later reoffer the previous plea even without a motion. It would have been
20  possible for the Lafler motion to have been made subsequent to the Marsden hearing. It is never
21  explained why the Lafler remedy had to have been sought at, or prior to, a time when the issue
22  before the judge was substitution of counsel. The fact that the motion had not been made at or
23  prior to the Marsden motion had no bearing on whether counsel could make it in the future.
24  Thus, the undersigned again finds that the supposed conflict had no bearing on the alleged
25  ineffective assistance of counsel which required substitution at that moment.

26      Accordingly, it could not have been federal constitutional error not to substitute counsel
27  independent of the public defender's office because of a conflict.

28  ////

B.  Ineffective Assistance of Counsel Based on Conflict of Interest

Petitioner essentially reprises his conflict argument made in Section A.  He, again, focuses on the alleged conflict of counsel at the first criminal proceeding.  And he sets forth no alleged ineffectiveness (in this section) concerning his different counsel in the second proceeding.  The ruling here simply repeats the discussion found in Section A above—there was no cognizable conflict of interest and/or no conflict of interest that caused any adverse effect on petitioner in the second proceeding.  However, this finding does not preclude petitioner from asserting ordinary neglect of his counsel stemming from the lack of a Lafler motion made *sometime* prior to the time when petitioner accepted a much worse offer.  That is discussed in the next section below.

C.  Ineffective Assistance of Counsel In The Second Proceeding

The established standards for ordinary ineffective assistance of counsel are set forth below.

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases."  Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Harrington, supra, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 687).   A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 669.  Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689. There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give the attorneys the

benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170 (2011) (internal quotation marks and alterations omitted).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690). See also Rhoades v. Henry, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere").

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

Under AEDPA, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Id. at 101. "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

For the reasons set forth below, the court finds the decision of the Court of Appeal to be AEDPA unreasonable.

Firstly, while counsel may not have been ineffective for failure to seek a Lafler remedy at or before the Marsden hearing, the record is silent as to why the motion was *never* made. The Court of Appeal analyzed the Lafler remedy in the conflict context, and found, as set forth above, that prior to the Marsden hearing, petitioner had expressed no desire to accept the first proceeding plea offer. But we unequivocally know that at some time petitioner's state of mind regarding a plea offer obviously changed with respect to one similar to the plea bargain offered in the first proceeding-- he ultimately accepted a plea offer with more punishing terms. The Lafler motion

16

was not without merit, and based on the facts here, reasonable counsel would have attempted such a motion when petitioner was of the mind to settle for more than the 3-4 year deal he initially demanded in the second proceeding. Prejudice is a quite apparent possibility as petitioner would ultimately, certainly have accepted the earlier plea offer as opposed to the harsher one he ultimately accepted.

Thus, an evidentiary hearing must be held to determine if there were some facts which weighed against the second counsel making such a motion after the time petitioner had a change of mind about what he would accept, and whether there was a reasonable probability that the motion would have been granted.

But that is not the end of the ineffective assistance issue. As set forth by the Court of Appeal, petitioner was also inexplicably sentenced for a crime for which he did not plead guilty. Without quoting the Court of Appeal here, the prosecutor in the second proceeding changed the "ordinary" petty theft charge to one involving petty theft of a retail establishment. As the Court of Appeal further held, there was no basis for such a charge. A *sub rosa* amendment inserting the correct charging statute was made at sentencing. And petitioner was sentenced on the "correct" charge. The Court of Appeal viewed the situation as "sloppy," but one involving no harm-no foul.

It is probably the law that pleading to a crime which was not possible under the facts is grounds for automatically vacating the plea, at least where there is a possibility of different punishment for the two crimes. But petitioner does not make that claim. He filters the claim through ineffective assistance of counsel which requires a prejudice finding. Although there can be no question that reasonable counsel would have sought amendment of the Information to the correct charge prior to allowing her client to accept a plea, petitioner raises no facts which demonstrate prejudice. And, the undersigned is unaware of any. Thus, this claim for ineffective assistance must fail.

Finally, it is unquestioned that prior to accepting the plea offer in the second proceeding which he ultimately accepted, petitioner was misadvised about the maximum penalties for the charges to which he ultimately plead because of principles of double jeopardy. People v Sanchez,

17

2015 WL 3902113, at \*7.  Although the maximum penalties for all the charged crimes were 18 years four months, principles of double jeopardy prohibited a punishment worse than that to which petitioner was sentenced in the first proceeding—14 years and four months.  However, the factual situation relating to the misadvisement is somewhat unusual.

Evidently abandoning his previous reluctance to accept any plea that wasn't a "good deal," petitioner and counsel were in court on March 29, 2013 to "plead to the sheet," i.e. simply plead guilty to all charges.  Defense counsel presented a paper to the court and stated:

> The idea here is that the Court will be sentencing in a range between ten years, four months to 14 years, four months, and I will be asking the Court at the time of sentencing to present evidence by way of a 1204 hearing to help support, obviously, a lower range sentence.

Res't's Lod.  Doc. No. 13 at 93.

The prosecutor objected to this statement and added: "The only thing as stated on page two, subsection 9, it says that this is a negotiated plea subject to the acceptance of the Superior Court.  *It is not negotiated, it is just a straight plea to the sheet*.  Id. (emphasis added).  Normally, after this statement, the judge would advise the defendant that if he pled to the sheet, the maximum penalty would be X and that he could not promise what the sentence would be.  But in this case, the judge picked up the plea negotiating reins, and stated:

> I agree.  I would ask the term negotiated to be removed.  It is a plea to the sheet, although the court has indicated a sentence that I would impose based on this plea.  The sentence is in a range of ten years, four months to 14 years, four months.  The Court would certainly consider the arguments of counsel in determining the range as well as the probation report.  I'll consider all these matters, and if you wish to have a sentencing hearing, we certainly will do so.

Id. at 94.

The judge went on to tell petitioner that if for some reason the sentencing range changed for the worse, he would be able to withdraw the plea.  He then began to review with petitioner the "plea form" petitioner had previously initialed, and abandoning any discretion with respect to the sentence stated:

> As I look at the plea form, there's an indication that your maximum exposure, as pled, would be 18 years, four months state prison, but the Court has indicated that based on a plea to the sheet…[t]

18

sentence the Court would impose would be in the range of ten years, four months to 14 years, four months state prison. You understand that?

THE DEFENDANT: Yes, sir.

Id. at 95.

It should also be noted that these statements were made in the context of the previous erroneous advisement to petitioner at the Marsden hearing that the court *could not* order the prosecution to re-offer the previous plea deal.

Thus, in pleading to the sheet, petitioner had to have possessed the mindset that he was getting some type of deal as the judge had excised the previously advised maximum potential punishment from the non-plea agreement, plea agreement. Of course, petitioner was not getting any such deal, as the maximum punishment if he pled guilty to all charges was limited by double jeopardy principles, i.e., to the same punishment as was given as the top of the range. And, of course, petitioner had to have been unaware that there was any possibility that Lafler set forth possibility of the plea to 8 years four months, outside the range the judge had just unequivocally said he was going to utilize. Defense counsel did not pick up on these mistakes, not then or afterwards.

There was no question in Sanchez that reasonable counsel should have been aware of the correct maximum and advised her client accordingly. See Bradshaw v. Stumph, 545 U.S. 175, 183 (2005); Boykin v. Alabama, 395 U.S. 238 (1969). There is no question that petitioner was not advised of the real potential for a Lafler lesser punishment outside the lower end of the given range.[7]

The Court of Appeal, silent as to the fact that counsel *never* made a Lafler motion, even

_____

[7] This is not a situation where counsel predicts a sentence within a given accurate range and "close enough is good enough" with respect to the actual sentence given. The prediction must be a gross mischaracterization of the actual sentence to warrant relief. Iaea v. Sun, 800 F.2d 861 (9th Cir. 1986). Here, in contrast, the maximum potential penalty was mischaracterized such that a defendant might make a determination to plead to the sheet thinking there was actually a reduction from the maximum in a proffered bargain (even if the bargain was court-initiated). Defendants must be advised about the consequences of their plea, and no court sanctions a result where the maximum penalty is stated in terms of "about X years, plus or minus." Rather, the actual maximum must be precisely given.

1  after petitioner's state of mind about accepting a plea had changed, essentially assumed the error

2  with respect to the erroneous advisement of the 18 year maximum, and held with respect to

3  prejudice:

> Here, by contrast, there is no evidence that defendant had reservations about the wisdom of entering the plea bargain; he did not claim that trial counsel coerced him into accepting a plea bargain, and he did not demonstrate unhappiness with the plea by attempting to withdraw it before sentencing. (*See Johnson, supra*, 36 Cal.App.4th at p. 1358.) Defendant has not even claimed, much less pointed us to any evidence supporting the claim, that the improper advice as to the maximum term played any part in his decision to accept the plea offer. He merely asserts cursorily and without supportive authority that counsel's misadvisement rendered his plea "unknowing and unintelligent." Defendant has failed to show prejudice.

11  People v. Sanchez, 2015 WL 3902113, at * 8.

12      This finding of fact is AEDPA unreasonable under 28 U.S.C. 2245(d)(2) whether one

13  looks to the factual conclusions drawn, or simply the absence of any real opportunity to present

14  the facts of prejudice.  Either situation entitles petitioner to an evidentiary hearing.  Earp v.

15  Ornoski, 431 F.3d 1158, 1166-1167 (9th Cir. 2005); Hawkins v. Chappell, No. 2:96-cv-01155-

16  TLN-EFB, 2013 WL 4095098, at *2 (E.D. Cal. Aug. 7, 2013) (and cases cited therein).  How, on

17  direct appeal, was petitioner, being represented by counsel at all times, to independently offer

18  such facts outside of the record?  He certainly could not have done so in the trial court—his

19  counsel was unaware of the error regarding double jeopardy principles in the first place; hence,

20  petitioner was presumably unaware as well.  Moreover, claims of ineffective assistance of counsel

21  in California are not adjudged on appeal unless the facts of ineffective assistance, including

22  prejudice, are clear from the facts of record.  People v. Lucero, 23 Cal.4th 692, 728-29 (2000).

23  Respondent does not assert that petitioner could have (easily or effectively) been able to

24  overcome this general rule.  It does not appear to the undersigned that petitioner had an

25  opportunity to factually present prejudice.  The inference drawing of the Court of Appeal cannot

26  suffice as a hearing in this case.

27      The fact of prejudice is colorable.  Why would petitioner accept a plea bargain which

28  effectively cemented in the same sentence he was given before in the first proceeding.  Some

bargain.  It stands to reason that the analytical factor most important in the plea offer context is the possible downside if one goes to trial.  A misrepresented downside gives a false starting point in assessment of whether to accept an offer—even where a counter-offer should start.  The misadvisement of the maximum penalty, coupled with the fact that trial counsel was ineffective in not making a <u>Lafler</u> motion in which petitioner would have understood he had the real opportunity for a much lower sentence, indicates the possibility, and perhaps probability, of prejudice.  The only fact permitting an inference that petitioner might have accepted the bargain he ultimately did in the second proceeding was the *possibility* that the trial judge could have sentenced him to ten years (the lower range of the plea bargain, but still in excess of the <u>Lafler</u> remedy).   Petitioner and respondent should have the opportunity to fully air the facts of prejudice.

Accordingly, an evidentiary hearing is ordered for claim three as discussed herein.

*Conclusion*

1.  Claims 1 and 2 of the petition are denied.

2.  The undersigned will hold an evidentiary hearing on Claim 3.

3.  The Clerk of the Court shall serve a copy of this order on the Federal Defender, who shall represent petitioner at the evidentiary hearing, or the Federal Defender shall suggest the appointment of a specific private counsel from the Panel.

Dated:  January 21, 2019

<u>/s/ Gregory G Hollows</u>
United States Magistrate Judge

21